The United States Court of Appeals for the Federal Circuit is now open at its session. I send the United States and the Honorable Court. Good morning, and if it please the Court, the imported merchandise is beta-carotene that has been formulated to standardize and stabilize the beta-carotene. If you want to use beta-carotene to color a food product, you have to use formulated beta-carotene. This is 1% carotene? This is a 1% product. You cannot use pure beta-carotene to color food products. I didn't see anywhere that any of this imported good is used in the, I'll call it the vitamin form. I don't know if that's the right word of art. And of course that was considered by the Court of International Trade. Your view is that that's entirely irrelevant or just in this case should not be considered? First Your Honor, I'd like to say that there are formulated products, my client manufactures them as well, that are used as sources of pro-vitamin A because beta-carotene is pro-vitamin A. But that's not, is that included? This particular product is manufactured, marketed, sold, and used as a food colorant. Now I believe what you're getting at here is the pharmaceutical appendix and our claim that the product should be given duty-free treatment pursuant to the pharmaceutical appendix. And also to understand the scope of the ruling when you say that there are other formulations that your client imports. They're not involved in this ruling, are they? They're not involved in this case, no. But getting back to the pharmaceutical appendix, if I may. The pharmaceutical appendix is written broadly. It does not have an actual use provision, which the Court below impermissibly legislated into the statute. It talks of products. It doesn't talk of compounds or elements. It then says that those products, by whatever name known, are to be afforded duty-free status pursuant to the pharmaceutical appendix. Well, this isn't a question of calling it another name. I mean, it's still beta-carotene, but it's only a 1% formulation. It's a 1% formulation. Now let me explain why, Your Honor. And it's not really usable as a pharmaceutical in a 1% formulation, is it? It's not used as a pharmaceutical. However, it still has that inherent property. If you're a food company and you put this product into your food and you decide you only need 1% because beta-carotene has a range of hues. It ranges from yellow to orange. So depending on how concentrated the formulated product is, that would give you that color that you're looking for. Now that being said, there's still pro-vitamin A going into that product. However, the clients of my company right now are buying this product for its use as a colorant. Other companies purchase similar products in higher concentrations for use in the vitamin industry. That's why I asked if those were at issue, other formulations for other uses. And there are other cases pending at the Court of International Trade involving formulated beta-carotene that is sold for use as pro-vitamin A. This particular case before you right now only involves glucaritin 1%, which is marketed, sold, and used as a colorant. However, we believe that the pharmaceutical appendix, given the fact that it talks about products by whatever name known, needs to be given a broad construction. In addition, the pharmaceutical appendix lists the chemical abstract services number as a vehicle or a means of assisting someone to determine which products are actually on the list. And if you look at that cash registry, on its entry for beta-carotene, it specifically lists glucaritin as a synonym for beta-carotene. It also lists Betavit and Robimix, two other formulated beta-carotene products which are typically sold into the pro-vitamin market. We believe it reinforces our position that the market in the United States is for formulated products. As the Court of International Trade found below, there is no market for crystalline beta-carotene in the United States. Therefore, the market has to be these formulated products. The intent of the drafters of the Agreement on Trade in Pharmaceutical Products, and with the pharmaceutical appendix next thereto, set out to eliminate tariffs on approximately 7,000 pharmaceutical products and chemical intermediates used to manufacture pharmaceutical products. The intent of the drafters was to liberalize trade in these products by eliminating duty on it. They specifically included beta-carotene on the pharmaceutical appendix. So, I respectfully request that we need to honor the intent of the drafters of the pharmaceutical appendix, recognize that pure beta-carotene isn't a commercial product, but formulated beta-carotenes are, and extend the duty-free treatment given beta-carotene by the drafters of the pharmaceutical appendix to formulated products, regardless of whether they're used for a colorant or as a source of pro-vitamin A. Again, the statutory language that brings the pharmaceutical appendix into the Harmonized Tariff Schedules says nothing about actual use of the product. It just simply says, the product by whatever name, now. Now, the chemical abstracts number, that presumably refers to pure beta-carotene. Yes, the chemical abstract numbers are assigned to pure compounds. So, the drafters of the pharmaceutical appendix very clearly could have limited the pharmaceutical appendix to compounds or elements. They could have just simply listed the cast number. They could have just simply listed the international non-proprietary name. But they didn't. In addition, they specifically used the word product in the statutory language. But if they use it to apply to pure compounds, then isn't it sensible and sound that it doesn't apply here because we're not dealing with a pure compound? No, because the cast number is given as a means to assist customs and the court to determine what the scope of the product listed on the appendix is. The chemical abstracts number is a matter of nomenclature, of establishing the nomenclature. They list the trademarks, the carotenes and the trademarks of various products that use the product. But that's quite a leap to say that all of the broad listings in chemical abstracts control the tariff. Well, actually, I'm not saying that, Your Honor. I'm just saying that that reinforces our position that the intent of the drafters of the pharmaceutical appendix was to create an appendix that reflected commerce. Let's remember that the common commercial meaning of the tariff provision are deemed to be the same. So when construing the reference to beta-carotene on the pharmaceutical appendix and giving honor to the drafters who said this includes those products by whatever name known, we believe we need to look at commerce. And in the United States, pure crystalline beta-carotene is not a commercial product. If you were to limit the reference on the pharmaceutical appendix to simply pure beta-carotene, you would be rendering that reference a nullity. We were told it's not a commercial product, among other reasons, because it self-combusts. Well, that's one of the reasons it's not a commercial product. It's pyrogenic. It needs to be formulated. It has these inherent powers. It has the ability to be pro-vitamin A and to function as a colorant. But in and of itself, it needs to be formulated, and that's what the market recognizes as beta-carotene. You're saying the decision below, if we affirmed it, would be to render the listing in the pharmaceutical appendix as a nullity. Why is that so terrible? If, as it happens, that pure compound with a CAS number is not a commercial entity, then the appendix listing of it is a nullity. Well, one could say that the listing on the appendix was there to capture the very products that are before the court today, these formulated products. And if I may, I'd like to point out that there are formulated products, which look structurally very similar to my client's product, that are imported into the United States and are afforded duty-free treatment pursuant to the Agreement on Trade in Pharmaceutical Products. And please let me give an example. Retinol is vitamin A, and retinol, like beta-carotene, is specifically listed on the pharmaceutical appendix. Customs and the World Customs Organization have issued tariff classification rulings on a product consisting of a small amount of vitamin A, which has been standardized and stabilized in a carbohydrate-gelatin matrix with antioxidants. So again, it structurally looks exactly like the product before the court here today. Now, that product, the vitamin A product, is classified under heading 2936 as a vitamin. Heading 2936 is one of the headings that went unconditionally duty-free pursuant to the enactment of the Agreement on Trade in Pharmaceutical Products. Even that being the case, retinol remains on the pharmaceutical appendix in the event that retinol were to be reclassified outside of chapter 2936. And that was recognized by the International Trade Commission in one of their reports, that these vitamins remain on the chemical appendix in the event that they were to be reclassified elsewhere. And that's what happened here in beta-carotene. Congress made a specific determination that beta-carotene was to be classified pursuant to its use as a colorant and not pursuant to its use as pro-vitamin A. This is reflected in a number of places in the tariff. Let's turn to heading 2936, which covers vitamins and pro-vitamins. Again, beta-carotene is pro-vitamin A. However, the exclusionary notes of chapter 29 specifically say that synthetic organic coloring matter is to be classified in heading 3204, which is the heading which provides for synthetic organic coloring matter. In addition, the explanatory notes of chapter 29 specifically say that pro-vitamin A, including beta-carotene, is to be classified as a colorant in 3204. The explanatory notes for 3204 clearly state that beta-carotene is one of the synthetic organic carotenoids that's to be classified in 3204. And in addition, 3204 recognizes that mixtures stay classified as synthetic organic coloring matter when the mixture consists of a named ingredient coupled with certain non-dye substances that have been added to standardize and or decrease the coloring ability. The court below made findings that the non-dye ingredients in my client's product function in that exact manner. And then finally, Congress, to recognize that all beta-carotene products, regardless of use, are to be classified in 3204 or 1935, put the K, the special indicator representing duty-free treatment pursuant to the pharmaceutical appendix, in the special duty race column associated with 3204 or 1935. Now, Your Honor, I see that I'm into my rebuttal time. Yes. And so if there are additional questions, I'll sit and reserve the rest of my time for rebuttal. Okay. Let's hear from the other side. Thank you. Mr. Rockefeller. Thank you, Your Honor. This court's decision in Lintek v. United States, I believe, controls this case. And that decision held that an a-anomany provision which does not provide specifically for preparations does not include preparations. And in this case, it's very clear that leukerotin is a preparation. And it—and in any case, not only is it a preparation, it is also very, very different in form than beta-carotene. It doesn't— As the court held. In this case, doesn't leukerotin fall rather clearly within the subheading 3404, 1935? Not at all, Your Honor. It doesn't—it doesn't because it's so— It's listed right there as— Beta-carotene. Numbered by the chemo—the CAS number, among other things. Leukerotin? Yes. It's not listed in the heading itself, Your Honor? Not listed in the heading, no. It's listed under the other names. Of the CAS. Again, that's a private—a private organization. We don't know how, except that in—apparently in 1999, that the—that leukerotin was added as being a synonym under the chemical abstract service. But we really don't know how those are added or what standards are required. No one really has any control over that. And certainly the HTS—H-T-S-U-S should not be controlled by that as well. This court—the court below held that beta-carotene—that leukerotin, rather, is neither beta-carotene, pure beta-carotene, nor is it a form of beta-carotene. And because of that, and because of what Lintek held, it's really clear—and we've listed all sorts of examples of how leukerotin is different than beta-carotene. How it's transported. There's—leukerotin has no chemical symbol. You can't find leukerotin in the chemical abstract service. It doesn't have a number. But beta-carotene does. What's the only active ingredient in leukerotin? Beta-carotene. But the government doesn't seem to be arguing that because it's used as a colorant instead of as a vitamin, it should be classified with colorants instead of vitamins. You—neither of you seems to think that that's dispositive, although it does look as if that impressed the Court of International Trade. You're talking about whether it's used as a pharmaceutical, Your Honor? Yeah. Customs is not taking the position that beta-carotene, in this instance, has to be used as a colorant. If crystalline beta-carotene comes into this country, is imported into this country, and you can see if you look at Exhibit C of the red brief, at the very end of the red brief, you can see that Roche Vitamins, in fact, has—was seeking and does, in fact, import crystalline beta-carotene. And that substance, yes, would go in under 3204.19.35 and would be classified as a pharmaceutical under the pharmaceutical appendix because of the K designation. Well, there seems to be no question but that if, in fact, leukerotin were somehow converted and used as a pharmaceutical, we wouldn't have this problem. It does seem as if what underlay Customs' decision was the ultimate use of the product. And again, it seems to me that that underlies the Court's decision, the Court of International Trade. But that's not the government's argument at all? That's correct, Your Honor. The government's argument is that if the crystalline comes into this country, you know, 96 to 100 percent pure beta-carotene comes into this—is imported into this country, it can be used either for a pharmaceutical or for a coloring. It's covered by the pharmaceutical appendix. Now, the pharmaceutical appendix doesn't require anything to be used as a pharmaceutical, does it? In fact, it says something to the opposite. It says, by whatever name it's known, such as leukerotin, the only active ingredient being beta-carotene, why isn't that, by any name known, in the pharmaceutical appendix? Why isn't—I'm sorry, Your Honor. Well, I'm trying to figure out why leukerotin isn't just another name for beta-carotene, as it is listed with a CAS number, and why, by any name known, it doesn't therefore fit in the pharmaceutical appendix, which is incorporated by reference into the statute. As we said in our brief, the INN, these products are to be described by the NNN nomenclature, not by CASF, by the CAS reference. That's there as an aid to identify the correct materials. But no one's disputing that it contains 1% beta-carotene. That's not at issue. Right. Right? Well, what's important is, with the INN, and why they classify things as, say, beta-carotene, beta-carotene is permissible under the INN, and that's the substance that's allowed. And if you read some of the INN materials that are in our red brief in the back, in the exhibits, the court will see that the INN is very concerned, and who is concerned, that things, for example— You've gotten away from Judge Wadey's question. You've gotten away from Judge Wadey's question, by whatever name known. Isn't your answer that leukerotin isn't another name for beta-carotene? It's a name for 1% beta-carotene? It's a name for one of the products that contains beta-carotene, yes, and there's many different products, and they have different purposes. So you say it's not another name for beta-carotene? Leukerotin is not another name for crystalline beta-carotene. It's a trademark. It's a trademark. And there's a number of them, and they have different uses. With the only active ingredient being? The only active ingredient is beta-carotene, but the products have very different uses. But the uses are irrelevant in the pharmaceutical appendix, right? I mean, it doesn't say it has to be used as pharmaceutical. Does it say that anywhere? No, but there's good reasons, and that's what I was getting to, Your Honor, is there's good reasons for limiting the pharmaceutical appendix to beta-carotene rather than leukerotin, because what if a doctor can't prescribe leukerotin for an immune deficiency disease? He or she would be committing malpractice. But there seems to be no issue that some percentage or whatever it is of beta-carotene or as a pro-vitamin or however it's used is the duty-free status is not challenged. I mean, it seems to me that the argument as you're presenting it supports the petitioner. If it doesn't depend on the use, then it's duty-free, whatever the use. You're not defending the court's decision, obviously. You're a Pele, but you're not defending its decision. I am defending the court's decision, Your Honor, but just not that one prong of the decision. Well, I mean, one prong is where it's classified, and that's the whole decision. Where do you think it should be classified? Under what, 1940? That's correct. It should be classified under 3204.19.40 or .50. But not 1935. That's correct. And the whole system will work very eminently well if, for example, crystalline beta-carotene is classified as Customs has done, classified that substance, commercial shipments of it, by the way. It's classified commercial shipments of beta-carotene under 3204.19.35. And then it also falls under the pharmaceutical appendix. However, preparations, which are entirely for products and beta-carotene itself, and pure beta-carotene, those fall under the succeeding subheadings. Let me ask you a question sort of to the contrary of what I was arguing earlier. You go to the drugstore and you buy a preparation of hydrocortisone, and you get 0.5% or 1% hydrocortisone cream, similar to what we've got here, 1%. You would call that hydrocortisone, wouldn't you? Would that be under the pharmaceutical appendix because that is a hydrocortisone product, even though it's only 1%? Or hydrogen peroxide, 3% or something. Same thing. I don't know how those fall under the pharmaceutical appendix. I can give you examples. Viagra has a chemical name. So does Lipitor have a chemical name. Those fall under the pharmaceutical appendix. And you're right, the percentages might be different. What you're saying is no pharmaceutical is administered generally in its pure form. That would be correct. A tablet or a capsule is a mixture of sugars and excipients. Customers would agree that you can either have the pure or you can have some minimal amount necessary to ship these materials into the United States to import them. You can have other things to stabilize these products to come into the United States. But this is carotenoid coloring matter, aonominate, most specific use. What is it, leucaritin? Leucaritin 1%. It is carotenoid, other carotenoid coloring matter, 1935. Why isn't that more specific than 40 or 50, which are other? And if we had Viagra, 10 mg, 20, 50 mg would still all be Viagra, wouldn't it? That's correct, but the problem is you can't prescribe leucaritin for an immune deficiency disease. You're talking about you can prescribe beta-carotene in some form, but you don't prescribe carotene. But you said that the government is not relying on the use? But the INN, Your Honor, if you go back to how that's used and how that ties into the pharmaceutical appendix, it must be described by an INN name, and that name is beta-carotene, and there's no equivalent to leucaritin. But is there anything in the statute that requires us to consider use? Is there anything in the pharmaceutical appendix that requires us to consider use? I believe, referring to the INN, the purposes behind having an INN name is to make sure that things are used properly and not improperly. And in this case, if you just say that leucaritin is equivalent to beta-carotene, it could be misused. Its only active ingredient is beta-carotene. Right, but it could be misused. And beta-carotene is pyrogenic. The only way you can use it is to put it in some kind of a formulation. Use a de-statifier. But you can certainly ship it. Excuse me, or de-statifier. But you can certainly ship it in that form, in the pure nucleosome form. Let's say that 1935 abacarotenoid coloring matter does specifically describe the product. In addition, let's say that the pharmaceutical appendix, which does recite beta-carotene, does describe the product, which prevails under the general rules of interpretation. The appendix or the aonominate heading? I think the appendix is intended to prevail, Your Honor. Why? Because it's thought, it's my understanding, it's thought that if different countries may interpret the HTS-US differently, but they still want the same chemical or the same compound to receive the same treatment. Then why are you here? Why aren't you conceding his point? Because I understand... Because that's what he wants. He wants the pharmaceutical appendix to prevail. But his material does not fall within the pharmaceutical appendix. He may want that to prevail, but his material doesn't fall within. It's not beta-carotene. It's the carotene. But, in other words, 1% hydrocortisone isn't hydrocortisone. I don't think those are necessarily equivalent, Your Honor. We're talking about... In other words, the appendix applies to pure compounds. No, it applies to pure compounds and compounds that have a minimal amount of materials necessary and at least used to import those materials into the United States. But it's not, it doesn't include everything that might include a tenth or percent of that active ingredient. In other words, substantially pure. Substantially pure, or pure in the sense... Which this isn't. This is not pure at all. So your argument, your argument is where you started, I guess, between 1935 and 1940, or 50. Correct. The material, it just doesn't fall under 35. If it does fall under 35, then the K designation applies. There's no doubt about that. Be more explicit, I don't understand. If it does fall under 35, what's the significance of the K? The K is on the pharmaceutical appendix, right? And that's the only place where beta-carotene is. So, pure beta-carotene, or beta-carotene as the government is presenting it to this court, if it's going to be... That's where crystalline beta-carotene comes under the pharmaceutical appendix. It's through its classification under 3204.19.35. That's the only place where it can be classified under the pharmaceutical appendix. But the carotene we are maintaining does not fall under 3204.19.35. You started out by quoting to us Lentig. And in that case, of course, we were talking about marigold meal that had been processed to such a point that it was no longer marigold meal. And that was the whole point. It was no longer what it had been before it was processed. This is exactly the opposite. It is still beta-carotene. That's its only use, is as beta-carotene. Doesn't Lentig actually rebut your case rather than prove it? No, not at all, Your Honor. I would beg to differ. Just in the sense that we're talking about marigold coloring matter and it was transformed to such a degree where it was no longer marigold coloring matter, but it was a preparation. This is still beta-carotene coloring matter, though, isn't it? This is leucarotene. It's not beta-carotene coloring matter. Beta-carotene coloring matter is different and it's used in different products. It's a trademark. It's not the name of a product. It's their trademark for their use for the product that provides an orange color to things that are eaten because it's a vitamin. It's the source. In fact, if it did identify the product, it would be generic and no longer be a trademark. I think our presiding judge has a good point. My time is up. It is. It's over. It's well over. Is there one final point you must make? Do I still have five minutes of rebuttal, Your Honor? No. Because I had to ask for that. Oh, because of your cross-appeal. Your cross-appeal is you didn't save that time. Outside I had saved that, but I didn't apparently here. Okay, thank you, Your Honor. We'll hear from Mr. Van Arnam. I believe we have the argument. Your Honor, you're right. This is beta-carotene coloring matter. In addition to being beta-carotene coloring matter, it's a mixture. The court below found it was a mixture. And because it's a mixture, general rules of interpretation 2B and 3B allow the product to be classified according to its essential character. At trial, expert witnesses for both the plaintiff and the defendant agreed on very little, but they agreed on one point, that the essential character of a carotene 1% is beta-carotene. So in light of that, I respectfully request that the court below's decision classifying this product in 3204 and 1935 be affirmed, but that its decision to deny pharmaceutical appendix treatment and the duty-free treatment that flows from being on the pharmaceutical appendix, that that portion of the decision be reversed, and that this court grant duty-free treatment to LeClerc 1%. Thank you very much. How can we give you what you asked for if we affirm the 1935 designation? Yes. 1935 designation. Doesn't that prevail over the pharmaceutical appendix? No, they work in lockstep, Your Honor. You go to the tariff, and the tariff in the descriptive column will say beta-carotene of the carotene coloring matter, and that correlates to 3204 and 1935. The court below found that the imported merchandise being beta-carotene coloring matter fit within that tariff description. You then keep going over on that line in the tariff until you get to a column called special duty rates, and this is the column where you see a bunch of letter indicators, and those letter indicators tell you whether that product could qualify for special trade treatment, maybe pursuant to NAFTA or maybe pursuant to the Israeli Free Trade Agreement. In this case, 3204 and 1935, that tariff line has the special K designation in the special duty rate column. Special K is a serial. Okay, you're right. It has the K designation in the special duty rate column, and that says that if the product is classifiable in 3204 and 1935 and is on the pharmaceutical appendix, it gets duty-free treatment. Having determined that the product is beta-carotene coloring matter and having determined that the pharmaceutical appendix specifically provides for beta-carotene and having found that there's no commercial marketplace for pure crystalline beta-carotene. Again, I keep coming back to the intent of the drafters of the pharmaceutical appendix in the Agreement on Trade in Pharmaceutical Products. It was to liberalize trade by eliminating duty on the named products, and beta-carotene is one of those named products. Okay. Thank you, Your Honor. Thank you, Mr. Van Arnam and Mr. Rockefeller. The case is taken into submission.